## S08A1798. THE STATE v. MOON.
(673 SE2d 255)

HINES, Justice.

The State appeals the suppression of defendant Jason Jerome Moon's jailhouse statement. Following a *Jackson v. Denno*[1] hearing, the trial court suppressed the statement after determining that there was a violation of Moon's Fifth Amendment right to remain silent, and alternatively, that the statement was involuntary as the result of the hope of benefit. Finding that Moon did invoke his right to remain silent during the interrogation, we affirm the suppression of his responses from that point on.

Moon was arrested on a warrant charging him with murder. He made two statements to police. The first took place when Moon was in the rear of the patrol car following his arrest, and the trial court ruled that this statement could be introduced into evidence at trial. The second statement, which the trial court suppressed in its entirety, was made during a videotaped interrogation of Moon at the Madison County jail; the trial court found the circumstances of the

---

[1] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

statement similar to those in *Green v. State*, 275 Ga. 569 (570 SE2d 207) (2002), i.e., that the defendant unambiguously asked for the interrogation to cease. Id. at 573 (2).

The State urges that Moon did not clearly invoke his right to remain silent, and therefore, his situation is not controlled by *Green*, but rather is governed by *Perez v. State*, 283 Ga. 196 (657 SE2d 846) (2008). In *Perez*, this Court determined that if a suspect makes an ambiguous or equivocal reference to the right to remain silent, the police do not have a duty to clarify the suspect's intent, and the interrogation may continue. Id. at 199-200. However, a review of the record, including the videotaped footage,[2] supports the determination that Moon was not ambiguous or equivocal in expressing his desire that the interrogation cease. Compare *Swanson v. State*, 282 Ga. 39, 41 (2) (644 SE2d 845) (2007) (review of the record including relevant videotape supported determination that defendant did not make an unambiguous and unequivocal request for counsel).

The relevant portion of the interview in question was conducted by Investigator Cross of the Madison County sheriff's office and Agent Williams of the Georgia Bureau of Investigation. After receiving his *Miranda*[3] warnings, Moon began to answer questions. After Cross told Moon that there were "still a whole lot of unanswered questions," Moon stated, "I don't — I'll just get me a lawyer, man." Cross and Williams questioned Moon about whether he wanted a lawyer. Moon stated that he was "getting confused," agreed that he had "mentioned a lawyer," but stated that he would continue the interview without a lawyer present. The questioning continued for some time, but then Moon stated, "I ain't got no more to say. I mean, that is it." However, the interview did not cease, and neither Cross nor Williams inquired if Moon wished to stop. Instead, Cross asked Moon to elaborate on his version of events and if there was "anything else that could have happened." He directed Moon to "just sit there and think for a minute." Moon replied, "That is it. I told you everything." Shortly thereafter, Moon stated, "I need to go. Because I mean, I done told y'all all you need to hear. . . ." Cross cajoled, "You just need to think a little bit?" Moon replied, "I don't need to think about nothing." A short time later, Moon reiterated, "I ain't got nothing to say," to which Cross queried, "So it is going to end like this?" Moon replied, "I guess it is," and explained, "I ain't fixing to send myself to the death penalty, man." The interrogation continued with Moon repeatedly asking that it cease, stating, inter alia, "I don't feel like talking."; "Can I get some rest?"; "Can I please

---

[2] The jailhouse statement was recorded on two video disks ("DVDs").

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

just talk to you tomorrow? Can I please do that?"; "I want to go home."; "I am going to go to sleep."; "[P]lease let me go to sleep, man."; "I have got to lay down, man."; and "I'm through."

> A person being subjected to custodial interrogation may at any time express his or her desire to remain silent and, thereby, end the interrogation. Any exercise of this right to silence must be scrupulously honored.

(Citation and punctuation omitted.) *Green v. State*, supra at 571-572 (2). Accord *Webb v. State*, 284 Ga. 122, 125 (2) (663 SE2d 690) (2008); *State v. Nash*, 279 Ga. 646, 649 (3) (619 SE2d 684) (2005). It was not in this case. A review of the videotaped exchange leads to the inescapable conclusion that Moon was asserting his right to silence when he stated, "I ain't got no more to say. I mean, that is it." This is reinforced by Moon's subsequent and repeated pleas to end the interrogation in the face of the investigators' determination to do otherwise. The interrogation should have ended after Moon's first statement that he had nothing more to say; consequently, Moon's responses thereafter were properly suppressed. *Green v. State*, supra at 573 (2). However, our review of the jailhouse interrogation fails to disclose a basis to suppress Moon's responses prior to his initial invocation of his right to remain silent.[4] Accordingly, the judgment of the trial court is affirmed in part and reversed in part.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 23, 2009.

Robert W. Lavender, District Attorney, Thurbert E. Baker, Attorney General, for appellant.
James W. Smith, for appellee.

---

[4] Our analysis renders it unnecessary to examine the remainder of Moon's statement in regard to the trial court's alternate finding that the statement was involuntary as induced by the hope of benefit.